UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| GENE R. M.,[1] | ) Case No. 8:20-cv-00144-JDE |
| Plaintiff, | ) MEMORANDUM OPINION AND ) ORDER |
| v. | ) |
| ANDREW SAUL, Commissioner of Social Security, | ) ) ) |
| Defendant. | ) |

Plaintiff Gene R. M. ("Plaintiff") filed a Complaint on January 23, 2020, seeking review of the Commissioner's denial of his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). The parties filed a Joint Submission ("Jt. Stip.") regarding the issues in dispute on October 30, 2020. The matter now is ready for decision.

---

[1] Plaintiff's name has been partially redacted in accordance with Fed. R. Civ. P. 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

# I.
# BACKGROUND

Plaintiff protectively filed for DIB and SSI on May 24, 2016, alleging disability commencing September 1, 2015. AR 18, 34, 171-81. On November 7, 2018, after his applications were denied initially (AR 74-75) and on reconsideration (AR 104-05), Plaintiff, represented by counsel, appeared and testified before an Administrative Law Judge ("ALJ"), as did a vocational expert ("VE"). AR 18, 34-55. On December 4, 2018, the ALJ issued a decision concluding that Plaintiff was not disabled. AR 18-27. The ALJ found that Plaintiff had acquired sufficient quarters of coverage to meet the insured status requirements of the Social Security Act ("SSA") through December 31, 2017. AR 18, 29. The ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. AR 20. The ALJ found Plaintiff had the severe impairment of schizoaffective disorder. AR 20-21. The ALJ also found Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment (AR 21), and he had the residual functional capacity ("RFC") to perform (AR 23):

> [A] full range of work at all exertional levels[2] but with the following nonexertional limitations: limited to performing simple and routine tasks; occasional changes in work setting; occasional and superficial interaction with coworkers; and no interaction with the general public as part of the job duties.

---

[2] A finding that a claimant can perform work at all exertional levels "necessarily includes work at the heavy, medium, light and sedentary levels[.]" Shafer v. Colvin, 2014 WL 3890321, at *4 (E.D. Cal. Aug. 4, 2014) (citation omitted); Salgado v. Astrue, 2011 WL 717251, at *5 (C.D. Cal. Feb. 22, 2011) ("An individual capable of performing very heavy work is also capable of performing heavy, medium, light and sedentary work[.]").

Based on the VE's testimony, the ALJ found Plaintiff was unable to perform his past relevant work as a meat clerk. AR 25. The ALJ found that Plaintiff, at 34 years old on the alleged disability onset date, is defined as a "younger individual." AR 26. The ALJ also found that he has at least a high school education[3] and is able to communicate in English. AR 26.

The ALJ next found that, because Plaintiff's ability to perform work at all exertional levels had been compromised by his nonexertional limitations, the ALJ consulted the testimony of the VE. AR 26. Considering Plaintiff's age, education, work experience, RFC, and the VE's testimony, the ALJ concluded Plaintiff was capable of performing jobs that exist in significant numbers in the national economy, including the medium, unskilled jobs of: hand packager (DOT 920.587-018) and laborer stores (DOT 922.687-058). AR 27. Thus, the ALJ concluded Plaintiff was not under a "disability," as defined in the SSA, from the alleged onset date through the date of the decision. AR 27. Plaintiff's request for review of the ALJ's decision by the Appeals Council was denied, making the ALJ's decision the agency's final decision. AR 1-6.

## II.
## LEGAL STANDARDS

**A.      Standard of Review**

Under 42 U.S.C. § 405(g), this court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if they are free from legal error and supported by substantial evidence based on the record as a whole. Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015) (as amended); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such relevant evidence as a reasonable person

---

[3] Plaintiff did not have any challenges in high school, and he attended three years of college but did not obtain a bachelor's degree. AR 36, 385.

might accept as adequate to support a conclusion. Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla, but less than a preponderance. Id. To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Id. at 720-21; see also Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) ("Even when the evidence is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."), superseded by regulation on other grounds.

Lastly, even if an ALJ errs, the decision will be affirmed where such error is harmless (Molina, 674 F.3d at 1115), that is, if it is "inconsequential to the ultimate nondisability determination," or if "the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." Brown-Hunter, 806 F.3d at 492 (citation omitted).

**B.      The Five-Step Sequential Evaluation**

When the claimant's case has proceeded to consideration by an ALJ, the ALJ conducts a five-step sequential evaluation to determine at each step if the claimant is or is not disabled. See Ford v. Saul, 950 F.3d 1141, 1148-49 (9th 2020); Molina, 674 F.3d at 1110.

First, the ALJ considers whether the claimant currently works at a job that meets the criteria for "substantial gainful activity." Molina, 674 F.3d at 1110. If not, the ALJ proceeds to a second step to determine whether the claimant has a "severe" medically determinable physical or mental impairment or combination of impairments that has lasted for more than twelve months.

4

Id. If so, the ALJ proceeds to a third step to determine whether the claimant's impairments render the claimant disabled because they "meet or equal" any of the "listed impairments" set forth in the Social Security regulations at 20 C.F.R. Part 404, Subpart P, Appendix 1. See Rounds v. Comm'r Soc. Sec. Admin., 807 F.3d 996, 1001 (9th Cir. 2015). If the claimant's impairments do not meet or equal a "listed impairment," before proceeding to the fourth step the ALJ assesses the claimant's RFC, that is, what the claimant can do on a sustained basis despite the limitations from his impairments. See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); Social Security Ruling ("SSR") 96-8p.

After determining the claimant's RFC, the ALJ proceeds to the fourth step and determines whether the claimant has the RFC to perform his past relevant work, either as he "actually" performed it when he worked in the past, or as that same job is "generally" performed in the national economy. See Stacy v. Colvin, 825 F.3d 563, 569 (9th Cir. 2016). If the claimant cannot perform his past relevant work, the ALJ proceeds to a fifth and final step to determine whether there is any other work, in light of the claimant's RFC, age, education, and work experience, that the claimant can perform and that exists in "significant numbers" in either the national or regional economies. See Tackett v. Apfel, 180 F.3d 1094, 1100-01 (9th Cir. 1999). If the claimant can do other work, he is not disabled; but if the claimant cannot do other work and meets the duration requirement, the claimant is disabled. See id. at 1099.

The claimant generally bears the burden at steps one through four to show he is disabled or meets the requirements to proceed to the next step and bears the ultimate burden to show he is disabled. See, e.g., Ford, 950 F.3d at 1148; Molina, 674 F.3d at 1110. However, at Step Five, the ALJ has a "limited" burden of production to identify representative jobs that the claimant can perform and that exist in "significant" numbers in the economy. See Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012); Tackett, 180 F.3d at 1100.

# III.
# DISCUSSION

The parties present two disputed issues, reordered as (Jt. Stip. at 4):

<u>Issue No. 1</u>: Did the ALJ properly consider Plaintiff's testimony[4]; and

<u>Issue No. 2</u>: Did the ALJ properly evaluate the opinion evidence of an examining psychologist.

**A.   <u>Subjective Symptom Testimony</u>**

In Issue No. 1, Plaintiff contends that the ALJ improperly assessed his subjective-complaint testimony. Jt. Stip. at 4, 13-23. Specifically, Plaintiff contends the ALJ improperly selected portions of the record, failed to observe his mental health fluctuated, and improperly discounted his testimony based on his daily activities. <u>Id.</u>

**1.   <u>Applicable Law</u>**

Where a claimant produces objective medical evidence of an impairment that could reasonably be expected to produce the pain or other symptoms alleged, absent evidence of malingering, the ALJ must provide "'specific, clear and convincing reasons for' rejecting the claimant's testimony regarding the

---

[4] Before the ALJ's decision, SSR 16-3p went into effect. <u>See</u> SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016). SSR 16-3p provides that "we are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term." <u>Id.</u> Moreover, "[i]n doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character" and requires that the ALJ consider all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. <u>Id.</u>; <u>see also</u> <u>Trevizo v. Berryhill</u>, 871 F.3d 664, 678 n.5 (9th Cir. 2017) (as amended). Thus, the adjudicator "will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation. The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person." SSR 16-3p, 2016 WL 1119029, at *10. SSR 16-3p's elimination of the word "credibility" from the Agency's subjective-symptom evaluation "does not, however, alter the standards by which courts will evaluate an ALJ's reasons for discounting a claimant's testimony." <u>Elizabeth B. v. Comm'r Soc. Sec.</u>, 2020 WL 1041498, at *3 (W.D. Wash. Mar. 4, 2020).

severity" of the symptoms. Treichler v. Comm'r Soc. Sec. Admin., 775 F.3d 1090, 1102 (9th Cir. 2014) (citation omitted); Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004). The ALJ's findings "must be sufficiently specific to allow a reviewing court to conclude that the [ALJ] rejected [the] claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." Id. at 885 (citation omitted). But if the ALJ's assessment of the claimant's testimony is reasonable and is supported by substantial evidence, it is not the Court's role to "second-guess" it. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001). Finally, the ALJ's finding may be upheld even if not all the ALJ's reasons for rejecting the claimant's testimony are upheld. See Batson v. Comm'r Soc. Sec. Admin., 359 F.3d 1190, 1197 (9th Cir. 2004).

### 2. Hearing Testimony

Plaintiff's testimony at the November 2018 hearing is summarized as follows. He previously worked in the meat department of a grocery store packing meat and serving customers. AR 37. Before that, he worked at a toy warehouse organizing inventory as it came off the trucks. AR 37-39. He also worked periodically at Macy's, a dental lab, the airport valet parking, Uber, and his parents' sandwich shop cashiering. AR 39-40. For a period of time, he had an online Amazon business selling about $100,000 worth of product, netting $15,000 to $20,000, a year. AR 48-49. Currently, to support himself, he receives food stamps and lives with his parents. AR 40.

Plaintiff feels he can no longer work because he "suddenly stopped liking people." AR 40. He feels "like they're possessed by demons." AR 40. Also, it takes a while for him to trust people. AR 40-41. He feels that he "can't look for a job right now" because, when he has tried other jobs, it "doesn't work out." AR 41. He explained that ever since he went to the hospital in October 2015, he has not been the same. AR 41. He was using methamphetamine at the time, but he has "[n]ot really" had a drug problem since. AR 42. The doctor who

treated him at the hospital suggested he take part in a paid research study, but he never called Plaintiff back and "kind of left [Plaintiff] hanging." AR 43-44.

After his hospital visit, Plaintiff saw a therapist in Long Beach, but he has not seen her in over a year. AR 42-43. He did not like therapy because he would explain things to one doctor, but then they would switch him to another doctor, and he would have to explain the same things all over again. AR 43. He took Loxapine and Wellbutrin but has not taken medication for a couple of years except for diabetes and his for thyroid. AR 44, 47. Since he stopped taking mental-health medication, his parents have been "helping a lot," but he still feels like there are "some dark forces around." AR 44-45. His parents provide food and they reassure him that things are going to get better. AR 45.

At his parents' house, he waters the plants, sweeps, and watches television. AR 45. He goes the market to shop, but if he sees a lot of cars, he becomes scared and thinks people are following him. AR 45-46. He can go to the market when he feels better and is able, but other times he cannot. AR 46. He is able to go to church, but once while driving to church, his car spun out on the freeway. AR 46. He drives if his parents force him to, but if it is his own decision, he has to think about it. AR 46.

Sometimes he sees or hears things that are not there. AR 47. When this happens, he just wants to be left alone. AR 47. He will go to his room and try to get evil thoughts out of his head. AR 48. It can take a half hour to an hour before he is ready to come back out of his room and talk to his parents. AR 48.

He has not worked since he went to hospital. AR 48. He was operating his Amazon business at the time, but is unable to do it anymore. AR 48-49.

### 3. Analysis

The ALJ considered Plaintiff's testimony and other subjective allegations of disability in the record based on back problems, paranoia, mental illness, fear of closed spaces, and auditory and visual hallucinations and found the

medically determinable impairments could reasonably be expected to cause the alleged symptoms, but his statements "concerning the intensity, persistence[,] and limiting effects of [the] symptoms" were not entirely consistent with the medical evidence and other evidence in the record. AR 23-24. The ALJ found Plaintiff's subjective complaints inconsistent with: (1) unremarkable physical findings; (2) unremarkable mental-health findings; (3) psychological improvement; (4) repeated denials of symptoms to doctors; (5) inconsistent testimony about his paranoia; and (6) daily activities. AR 24-25.

To start, the Court notes the ALJ did not reject Plaintiff's testimony in full, but found it "not entirely" consistent with the record, constrained the RFC to accommodate nonexertional limitations, and consulted a VE to determine the extent to which those limitations eroded on the occupational base. AR 23, 26. The RFC limited Plaintiff to occasional and superficial interaction with coworkers, and no interaction with the general public, taking into account Plaintiff's subjective complaints that he does not like people and needs time to trust them. AR 23, 40-41, 45-46. Those determinations necessarily partially credited Plaintiff's subjective complaints and the opinion evidence, as discussed more fully below. To the extent the ALJ did not further credit aspects of Plaintiff's testimony, she provided legally sufficient reasons for doing so.

First, the ALJ detailed a number of unremarkable physical findings. AR 21, 23-24. "Although lack of medical evidence cannot form the sole basis for discounting pain testimony," it is a factor that the ALJ can consider in her analysis. Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005); see also Rollins, 261 F.3d at 857. Plaintiff based his application, in part, on physical ailments. AR 21, 203 (disability report listing physical conditions such as low thyroid, "no teeth," back injury, diabetes, and eye problems). Here, however, he does not challenge the ALJ's finding discounting his subjective complaints in part based on these findings. Jt. Stip. 13-23. These unchallenged, unremarkable,

"normal" physical findings are supported by the record.[5] AR 21, 23-24, 403, 414-15, 418-19. Accordingly, ALJ properly considered the inconsistency between them and Plaintiff's subjective allegation of disability as one of many other valid factors supporting the decision. See Burch, 400 F.3d at 681; Jones v. Comm'r Soc. Sec. Admin., 2012 WL 6184941, at *5 (D. Or. Dec. 11, 2012) (ALJ could reasonably reject subjective complaints as unsupported by record evidence and inconsistent with disability report).

Second, the ALJ found that unremarkable psychological findings also undermined Plaintiff's complaints. AR 23-24. For example, despite Plaintiff's subjective complaints that he does not like and cannot be around people (AR 40-41, 45-46, 203), treating medical providers and the consultative examiner, clinical psychologist Dr. Sara Hough, largely found Plaintiff was able to interact appropriately and his mental status was "within normal limits." AR 385. Among other normal findings, Plaintiff maintained eye contact, had normal speech and motor activity, had a calm and cooperative demeanor, was able to answer questions appropriately, and did not show any signs of agitation, compulsivity, or fearful behavior. AR 23-24, 295, 335, 385; see also AR 212 (disability report stating Plaintiff was "[m]entally ok and capable through the telephone conversation"). Similarly, although Plaintiff alleged that he was unable to focus and fulfill job responsibilities (AR 48-49, 203), his treating providers and Dr. Hough found largely intact cognitive functioning, including a normal attention span, normal concentration, normal thought

---

[5] The Court may take a plaintiff's failure to address this aspect of the ALJ's reasoning as a waiver of a challenge to that aspect. Greger v. Barnhart, 464 F.3d 968, 973 (9th Cir. 2006) (claimant waived issues not raised before the district court); Owens v. Colvin, 2014 WL 5602884, at *4 (C.D. Cal. Nov. 4, 2014) (claimant's failure to discuss, or even acknowledge, ALJ's reliance on certain reasons waived any challenge to those aspects of ALJ's finding).

processes, and intact recent and remote memory. AR 23-24, 295, 335 385-86. The ALJ properly considered the inconsistency between these mental-health findings and Plaintiff's subjective allegation of disability. See Burch, 400 F.3d at 681; Rollins, 261 F.3d at 857.

Third, the ALJ discussed Plaintiff's mental health improvement. AR 24. The ALJ explained that Plaintiff did not begin receiving regular mental healthcare until June 2016. AR 24, 357, 383. After that, he was treated with medication and psychotherapy, and experienced improvement. AR 24, 359, 362, 366-67, 383. For example, the ALJ started taking medication on June 16, 2016, and by June 30, 2016, he had no perceptual disturbances. AR 24, 359, 362. Also, on August 18, 2016,[6] he reported that bi-monthly therapy sessions were "going well," medication was helping, and his mood was stable for most of the day AR 24, 367. In December 2016, he reported that "it helps to talk to a therapist," and medication "improved his symptoms." AR 24, 383. The ALJ properly considered this in discounting Plaintiff's subjective complaints. See Morgan v. Comm'r Soc. Sec., 169 F.3d 595, 599 (9th Cir. 1999) (ALJ properly discounted claimant's subjective complaints by citing physician's report indicating that symptoms improved with treatment); Warre v. Comm'r Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006) (impairments that can be controlled with treatment are not disabling).

Fourth, the ALJ noted that Plaintiff testified he has auditory and visual hallucinations, but he denied them to psychiatrists and physicians. AR 24, 47-48. This is supported by the record. On numerous occasions, Plaintiff either denied, or did not report, auditory or visual hallucinations in medical providers' review of his psychiatric condition. AR 361 (Plaintiff "denies ah, vh", referring

---

[6] The ALJ's decision contains a typographical error indicating this record was created in August 201**8**. See AR 24, 366-67.

11

to auditory hallucinations/visual hallucinations (see Marshall v. Berryhill, 2020 WL 1531358, at *2 (N.D. Cal. Mar. 31, 2020))), 364 (same), 367 (same), 396, 408, 414. The ALJ properly considered this factor. See Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014) (in assessing subjective complaints, an ALJ may consider prior inconsistent statements and testimony by the claimant that "appears less than candid"); Colter v. Colvin, 554 F. App'x 594, 596 (9th Cir. 2014) (ALJ properly discounted claimant's testimony in part because her testimony was undermined by her own admissions).

Fifth, the ALJ found that, despite Plaintiff's allegations of paranoia around people, he was nonetheless able to attend church. AR 22, 24. As mentioned, Plaintiff alleged paranoia as part of his application, and testified at the hearing that when he goes to the market he can become scared if he sees many cars, and he thinks people are following him. AR 45-46, 202. Yet, he testified that he was able to go to church. AR 46. The ALJ properly considered this as an inconsistency in Plaintiff's own statements regarding the allegedly disabling condition. See Ghanim, 763 F.3d at 1163; Colter, 554 F. App'x at 596; Lualemaga v. Berryhill, 2018 WL 6619745, at *10 (C.D. Cal. Dec. 18, 2018) (ALJ properly discounted claimant's statements as "inconsistent with other evidence in the record" in part because claimant testified she had difficulty being around others but was able to attend church); Dellomes v. Colvin, 2014 WL 6908527, at *1, *12 (W.D. Wash. Dec. 8, 2014) (ALJ properly discounted subjective complaints based on contradictions in testimony of claimant who alleged depression and said he had not left the house, but then admitted he goes to church with a neighbor).

Seventh, the ALJ separately listed activities of daily living that she believed were inconsistent with the ability to work. Those included Plaintiff's testimony about watering plants, sweeping, watching television, and taking his medication without help. AR 24. However, the Ninth Circuit has "repeatedly

warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." Garrison v. Colvin, 759 F.3d 995, 1016 (9th Cir. 2014); Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001) ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her [testimony] as to her overall disability."). A claimant's daily activities may be grounds for discounting testimony only "if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions . . . ." Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007); see also Allison v. Astrue, 2010 WL 3767551, at *10 (W.D. Wash. Sept. 2, 2010) ("[T]he ability to take medication, participate in physical therapy[,] and attend to one's personal care, hardly establish an ability to function effectively in terms of performing work activities."). The Court need not decide whether reliance on the activities outlined in the seventh reason were proper because any alleged error would be harmless considering the other valid reasons for discounting the testimony. See Reyes v. Berryhill, 716 F. App'x 714, 714 (9th Cir. 2018) (where ALJ provided valid reasons for discounting claimant's testimony, "[a]ny error in other reasons provided by the ALJ was harmless"); Batson, 359 F.3d at 1197; Williams v. Comm'r, Soc. Sec. Admin., 2018 WL 1709505, at *3 (D. Or. Apr. 9, 2018) ("Because the ALJ is only required to provide a single valid reason for rejecting a claimant's pain complaints, any one of the ALJ's reasons would be sufficient to affirm the overall . . . determination.").

      Finally, while Plaintiff contends that the third, fourth, and fifth reasons proffered by the ALJ's fail to appreciate that his mental health impairments

fluctuated and that his condition makes it "likely" he had "better days and worse days" (Jt. Stip. at 19-20), to the extent some findings outlined above conflicted with other findings, they are nonetheless substantial evidence supporting the ALJ's decision. See Ford, 950 F.3d at 1156 ("Although [claimant] argues that the ALJ failed to recognize the inherently variable nature of mental illness, '[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation.'" (citation omitted)).

The Court finds the ALJ provided sufficiently specific, clear, and convincing reasons for discounting Plaintiff's symptom testimony, that is, unremarkable physical and mental-health findings, psychological improvement, denial of symptoms, and inconsistent testimony. Those grounds are sufficient to affirm the ALJ's decision on the issue.

**B.     Opinion Evidence**

In Issue No. 2, Plaintiff contends the ALJ improperly evaluated the consultative examining opinion of Dr. Hough. Jt. Stip. at 4-10. Specifically, Plaintiff contends that the ALJ assigned "great weight" to Dr. Hough's opinion, but the RFC fails to account for the doctor's limitations, most importantly the limitations on Plaintiff's "ability to maintain attendance and complete a workday." Jt. Stip. at 5-6, 8-9.

**1.     Applicable Law**

In setting an RFC, an ALJ must consider all relevant evidence, including medical records, lay evidence, and "the effects of symptoms, including pain, that are reasonably attributable to the medical condition." Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006) (citation omitted); 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1). The ALJ must also consider all the medical opinions "together with the rest of the relevant evidence [on record]." 20 C.F.R. §§ 404.1527(b), 416.927(b).

14

"There are three types of medical opinions in social security cases: those from treating physicians, examining physicians, and non-examining physicians." Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 692 (9th Cir. 2009). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). "The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician." Id. "[T]he ALJ may only reject a treating or examining physician's uncontradicted medical opinion based on clear and convincing reasons" supported by substantial evidence in the record. Carmickle v. Comm'r Sec. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008) (citation omitted). "Where such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 1164 (citation omitted).

An ALJ is not obligated to discuss "every piece of evidence" when interpreting the evidence and developing the record. See Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003) (citation omitted). Similarly, an ALJ is also not obligated to discuss every word of a doctor's opinion or include limitations not actually assessed by the doctor. See Fox v. Berryhill, 2017 WL 3197215, *5 (C.D. Cal. July 27, 2017); Howard, 341 F.3d at 1012. Finally, the ALJ is not required to recite "magic words" or "incantations" to reject an opinion. Magallanes v. Bowen, 881 F.2d 747, 755 (9th Cir. 1989). "A reviewing court [is] not deprived of [its] faculties for drawing specific and legitimate inferences from the ALJ's opinion." Id.; Towne v. Berryhill, 717 F. App'x 705, 707 (9th Cir. 2017) (citing Batson, 359 F.3d at 1193 (if the ALJ provides enough information that the reviewing court can draw reasonable inferences from the record in support of the ALJ's findings, then the ALJ's findings should be upheld)).

## 2. Analysis

In December 2016, Doctor Hough performed a comprehensive mental examination and evaluation of Plaintiff. AR 382-90. As noted above, Doctor Hough found that "examination of [Plaintiff's] mental status was within normal limits," and noted that Plaintiff was "able to focus without any challenges" and "relate to the examiner without any challenges." AR 385. Doctor Hough deemed Plaintiff's prognosis "fair," and stated his condition "will improve" with treatment compliance and a sober lifestyle. AR 387.

Doctor Hough provided a functional assessment of twelve categories, finding that Plaintiff was: (1) "Not impaired" in the ability to (a) understand, remember, and carry out simple one or two-step job task instructions, (b) do detailed and complex tasks, (c) understand safety rules and regulations and maintain safety on the job, (d) accept instructions from supervisors, and (e) perform work activities without special or additional supervision; (2) "Mildly impaired" in the ability to (a) understand, remember, and carry out simple one or two-step job instructions over an eight-hour, 40-hour work period without emotionally decompensating, (b) maintain concentration and attention, (c) maintain reasonable persistence and pace, (d) associate to day to day work activities, and (e) maintain regular attendance in the work place and perform activities on a consistent basis; and (3) "Moderately impaired" in the ability to (a) do detailed and complex tasks over an eight-hour, 40-hour work week without emotionally decompensation, and (b) relate to coworkers and the public in an appropriate manner. AR 387-88.

The ALJ conducted a proper assessment of Doctor Hough's opinion.

As mentioned, at step-two, the ALJ found Plaintiff's schizoaffective disorder was a severe impairment. AR 20. At step-three the ALJ considered Plaintiff's mental impairments under the four functional areas known as the "paragraph B" criteria and referenced Doctor Hough's opinion in finding that

Plaintiff had only a mild limitation in understanding, remembering, and applying information. AR 22. The ALJ found Plaintiff had moderate limitation—referencing Plaintiff's testimony along with Doctor Hough's opinion—interacting with others. AR 22. The ALJ further found Plaintiff had moderate limitation in concentrating, persisting, or maintaining pace, again referencing both Plaintiff's testimony and Doctor Hough's opinion. AR 22. Finally, the ALJ found Plaintiff only mildly limited in adapting or managing oneself, referencing, yet again, both Plaintiff's testimony and Doctor Hough's opinion. AR 22. The ALJ concluded that because Plaintiff's mental impairment did not cause at least two "marked" limitations, or one "extreme" limitation, the "paragraph B" criteria were not satisfied. AR 22.

The ALJ then explained: "[t]he limitations identified in the 'paragraph B' criteria are not a[n RFC] assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental [RFC] assessment used at steps 4 and 5 . . . requires a more detailed assessment." AR 22. The ALJ concluded by stating that "the following [RFC] reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis" and then assessed Plaintiff's RFC. AR 22.

As noted above, the ALJ limited Plaintiff in the RFC to "simple and routine tasks; occasional changes in work setting; occasional and superficial interaction with coworkers; and no interaction with the general public as part of the job duties. AR 23. The ALJ considered "all symptoms" in fashioning the RFC. AR 23. In doing so, the ALJ considered Plaintiff's subjective statements and testimony about his mental health, his mental health history and treatment, and again Doctor Hough's opinion. AR 23-24. The ALJ noted Doctor Hough's discussion of improvement with medication, her normal findings, and Plaintiff's fair prognosis with treatment compliance. AR 24. The ALJ also noted Doctor Hough's opinion assessed no more than mild limitations in any of

the functional areas except for the moderate limitations in interacting with coworkers and the public. AR 24-25. The ALJ found Doctor Hough's opinion well supported by the evidence and assigned it "great weight." AR 24-25.

      Plaintiff has failed to show how this exhaustive consideration of Doctor Hough's examination and opinion was in error. The ALJ found schizoaffective disorder to be a severe impairment at step two, assessed Plaintiff's mental functioning at step three and acknowledged that the "paragraph B" criteria are separate findings from the RFC, and then considered all of Plaintiff's mental health issues in assessing the RFC. AR 22. While the ALJ did not mention Doctor Hough's moderate limitation in Plaintiff's ability to complete detailed and complex tasks in her discussion of the RFC assessment (AR 24-25, 387), she noted that limitation in the "Paragraph B" findings (AR 22) and certainly accommodated for the limitation by restricting Plaintiff to "simple and routine tasks." AR 23. Similarly, the ALJ adequately accommodated Doctor Hough's limitations on Plaintiff's ability to relate to coworkers and the public in an appropriate manner (AR 387-88) by restricting Plaintiff to only occasional and superficial interaction with coworkers, and precluding public interaction. AR 23. Accordingly, Plaintiff has not shown the ALJ failed to properly consider his mental impairments and Doctor Hough's opinion in assessing the RFC. See, e.g., Hoopai v. Astrue, 499 F.3d 1071, 1077 (9th Cir. 2007) (explaining the Ninth Circuit has not "held mild or moderate depression to be a sufficiently severe non-exertional limitation that significantly limits a claimant's ability to do work beyond the exertional limitation."); Shapiro v. Berryhill, 2020 WL 836830, at *1, 6 (D. Nev. Feb. 20, 2020) (RFC that included restriction to simple, non-detailed, non-complex work, with occasional interaction with co-workers and supervisors but never the public, adequately accounted for the moderate findings in two paragraph B criteria); Ball v. Colvin, 2015 WL 2345652, at *3 (C.D. Cal. May 15, 2015) ("As the ALJ found that Plaintiff's

mental impairments were minimal, the ALJ was not required to include them in Plaintiff's RFC."); Sisco v. Colvin, 2014 WL 2859187, at *7-8 (N.D. Cal. June 20, 2014) (ALJ not required to include in RFC assessment mental impairment that imposed "no significant functional limitations").

Plaintiff points to the VE's testimony that one absence per month or being off-task above 10% of the workday would preclude all work. Jt. Stip. at 6-8 (citing AR 52-53).[7] However, neither limitation appears in Doctor Hough's opinion; rather, as Defendant notes (Jt. Stip. at 13), they are limitations simply posed in the hypothetical. AR 52-53. While Doctor Hough assessed mild limitations in attendance and performing activities on a consistent basis, and maintaining reasonable persistence and pace, she did not conclude that Plaintiff would be absent from work more than once a month or off task for 10% of the workday. AR 387-88. Moreover, the ALJ did not equate the mild limitations to absences or an off-task limitation in the hypothetical or the decision, and counsel, despite having the opportunity, had no questions for the VE and did not raise the issue before the Agency. AR 53, 250-51; See Howard v. Astrue, 330 F. App'x 128, 130 (9th Cir. 2009) (claimant waived argument that ALJ's hypotheticals were inadequate where claimant's counsel had opportunity to pose hypotheticals but did not raise allegedly erroneously omitted limitation).

To the extent Plaintiff also contends that the ALJ should have included other mild limitations in the RFC from Doctor Hough's opinion, he has failed demonstrate he is entitled to relief. Doctor Hough's finding that Plaintiff's mental status is "within normal limits," and opinion that he is not limited in many categories and only mildly to moderately in others, supports the ALJ's ultimate determination. AR 385, 387-88. Plaintiff has not shown that this

---

[7] The VE testified that no more than one absence per month or being off task more than 10% is tolerated in "most" employment." AR 53.

opinion, or any other opinion from any doctor, precludes him from all work. The ALJ's decision is supported by substantial evidence. See, e.g., Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993) (substantial evidence supported finding claimant, although impaired, was not disabled and could perform work because "[n]one of the doctors who examined [claimant] expressed the opinion that he was totally disabled"); Reddick, 157 F.3d at 725 (ALJ can satisfy substantial evidence requirement "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings"); Waldner v. Colvin, 2015 WL 711020, at *6 (D. Or. Feb. 18, 2015) (no error in RFC finding that specifically included limitations tailored to claimant). Even if the ALJ's decision was susceptible to another interpretation, Plaintiff would not be entitled to relief. See Ford, 950 F.3d at 1156.

The Court finds that the ALJ did not err in her assessment of Dr. Hough's opinion. Accordingly, reversal is not warranted.

## IV.
## ORDER

IT THEREFORE IS ORDERED that Judgment be entered affirming the decision of the Commissioner and dismissing this action with prejudice.

Dated: November 20, 2020

_____
JOHN D. EARLY
United States Magistrate Judge